UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 14-315 (1) (MJD)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S** |
| | ) | **SENTENCING POSITION** |
| v. | ) | |
| | ) | |
| MAHDI HUSSEIN FURREH, | ) | |
| | ) | |
| Defendant. | ) | |

  A better life, a brotherhood, and financial support of self and family; these are just a few things that Mahdi Furreh was anticipating when he made his trip to Kenya.  Lies, broken promises, and a harsh awakening of the terror that is al Shabaab is what Mr. Furreh witnessed.  No longer after he arrived in Kenya, Mr. Furreh did all he could to get back to the United States.  However, before he was able to secure a new flight home, he was arrested. Mr. Furreh was scared, nervous, and unsure of how to proceed while being questioned. This fear resulted in dishonesty to federal agents, and that is what has brought him before this Court.

  Prior to leaving, Mahdi Furreh was going through a hard time. He and his wife were on the outs. She left him and took their kids.  He thought he had nothing in the United States. He started to become intrigued by the allure of a new life as others placed ideas in his head.  This led to his short lapse in judgment and is not indicative of the person that Mr. Furreh is: a hard working, law-abiding, family man. These traits are proven by his crime free background, strong work ethic,

1

family values, and strong support system. Mr. Furreh realizes how fortunate he is and has seen firsthand things are not better over-seas. This is why that this offense will be the only offense that Mr. Furreh will commit.

The defendant, Mahdi Furreh, by and through his attorney, Manny K. Atwal, herby submits his position with respect to sentencing. The PSR finds a total offense level of 29, and a criminal history category of VI. Mr. Furreh has a total criminal history score of zero, which under USSG Chapter 5, Part A, would put him in a category of I. But because the parties agreed that the offense involved a federal crime of terrorism, the criminal history category is VI under USSG §3A1.4(b). The advisory guideline range is 151 to 188 months. The statutorily authorized maximum sentence is eight years; therefore, the advisory guideline term of imprisonment is 96 months.

## Legal Analysis

**I.    3553(a) Sentencing Factors**

**A.    The nature and circumstances of the offense.**

Mr. Furreh was charged with a one-count information on September 24, 2014 charging him with making a False Statement on January 10, 2014 in violation of 18 U.S.C. § 1001.

Prior to this offense, Mr. Furreh was having a rough time in the United States, he was feeling hopeless and a promise of a better life appealed to him. He was swayed by videos and propaganda. (PSR, 4.) At the time he thought, and was

encouraged by others, that a better life could be achieved by joining al Shabaab. He didn't know exactly what al Shabaab entailed but he took the word of others, and believed what he saw in the videos that showed riches and a better life. Mr. Furreh knew people from Minnesota that had involvement with al Shabaab. He was present with others when in July 2012, two different young men went to the airport where they planned to fly to Africa with the intent to join al Shabaab. (PSR, 1.)  Mr. Furreh was subsequently questioned about the airport trips and was not truthful to the FBI agents regarding the purpose of their trip, or having email and Facebook accounts.

Mr. Furreh, after his relationship with his wife deteriorated, decided to travel to Kenya on March 26, 2013 to see firsthand if everything he had heard and seen about al Shabaab were true.  Once he got to Kenya on March 27, 2013, he quickly realized it was nothing like he had seen or been told and he made the choice to get out.  He made calls and sent emails to his travel agent, and did as much as he could to get his return flight. (PSR, 4.)

While Mr. Furreh was in Kenya, he took time to explore the city and get to know people.  He met people while playing soccer and some of the people he met had escaped Somalia to get away from al Shabaab.  He met a young woman who had escaped from Somalia in her bare feet, running through the streets in the middle of the night.  She had personally experienced the horrors of al Shabaab when they took her sister and forced her to marry. She witnessed rapes, and she told Mahadi if people refused to join al Shabaab, they were killed.  He heard more

stories of random killings, rapes, and terrors that painted a completely different picture of al Shabaab then he had been exposed to while in the United States. He began emailing his travel agent in Minnesota to come back home.

Mr. Furreh had been staying in a hotel once he arrived in Kenya, however funds started running low and as a way to save money he moved to a house that was run by an individual. Another person who assisted in Mr. Furreh's travel to Kenya, had given Mr. Furreh the contact information for the individual running the house. Mr. Furreh went to this "trusted" person's home. By now, Mr. Furreh was trying desperately to find funds to fly home to the Untied States. However, before he could purchase a ticket home, the house that was raided. On March 27, 2013, an unexploded bomb was recovered from a mini-bus in Nairobi, and the cell phone connected to the device was linked to an individual staying in the house. The Kenyan Police Service Anti-Terrorism Police Unit raided the residence, and Mr. Furreh was arrested. (PSR, 2.)

Mr. Furreh was interviewed and detained while in Kenya. (PSR, 3.) Mr. Furreh was interviewed first on April 22, 2013 and again on April 25, 2013. While he was interviewed without an attorney in Kenya, Mr. Furreh provided truthful and untruthful information. Because Mr. Furreh was not the target of the Kenyan investigation related to the attempted mini-bus bombing, he was free to leave Kenya. After two weeks of being detained, Mr. Furreh was released to the airport to return to the United States.

4

Once Mr. Furreh arrived back in Minnesota on June 20, 2013, FBI agents questioned him several times.  On June 20, 2013, the FBI agents questioned him about inconsistencies that he had given to authorities in Kenya.  Mr. Furreh gave the FBI agents permission to search his phone, but was not truthful as to why he traveled to Kenya, about contacts in his phone, and contacting certain individuals. As he told the Court when he pled guilty, he knowingly made false statements to the FBI agents. For those untruths, he is remorseful. He has pled guilty and completely accepts responsibility for his actions.

**B.     The history and characteristics of the defendant.**

The PSR outlines Mahdi Furreh's background in detail in Section C.  He was born in Somalia and resided in Somalia until he was six years old.  Mr. Furreh was a young child when the civil war began, and due to the war it was too dangerous to go outside or go to school. (PSR, 7.)  When he was age six, Mr. Furreh and his family fled to a refugee camp in Ethiopia. After being in the camp for a year, his father was able to immigrate to the United States.  Mr. Furreh, his mother and his two siblings remained in Ethiopia.  Mr. Furreh's mother began a relationship with Abdi Abass.  Mr. Furreh's mother and Mr. Abass had five children together.

In 2000, when Mr. Furreh was 18, he and his two full siblings were able to join their father in the United States.  Mr. Furreh and the family settled in Minnesota, where his father was living.  Around the same time, Mr. Abass died. His mother and the other children joined Mr. Furreh in Minnesota.  Once in

5

Minnesota, Mr. Furreh's mother and father resumed their relationship and had four more children. The two have since separated, but Mr. Furreh has a relationship with both parents and currently lives with his mother and her four minor children.

Mr. Furreh's upbringing was unique and challenging. He spent his early years living in fear and danger, not being able to attend school or play outside. Once he moved to Ethiopia, he still wasn't allowed to return to school and spent his days playing soccer with other immigrants. There have been a lot of things in Mr. Furreh's life that have been unpredictable and inconsistent, but one constant for him has always been having a large family. Everything he has gone through, the hard times and rough upbringing, and this offense that has brought him to this Court, has made him a stronger person and made him realize that life in the United States is a blessing and he will not waste it.

1. **Pretrial Release**

Mr. Furreh was arrested on September 30, 2014. He pled guilty on October 3, 2014. He was released on October 3, 2014 subject to a $25,000 unsecured bond. Mr. Furreh was released on the conditions that he submit to Pretrial Services for supervision, abide by travel restrictions, surrender his passport, maintain or seek employment, submit to curfew with electronic monitoring, and reside at an approved residence. (PSR, 1.) Mr. Furreh has met all of his conditions. He found employment as a truck driver the same month as release. He resides with his mother. He calls his Probation Officer every Monday and has home visits every

month. He has never violated his curfew. He has had no GPS violations. He has remained law abiding.

Mr. Furreh's supervising officer has reported that he reports as directed and has complied with all Court ordered conditions of release. When he is not working, he spends time visiting his kids and hanging out with his family. His wife moved to Kenya awhile ago, but their three daughters have remained in Minnesota. Mr. Furreh's excellent behavior on pretrial release is a good demonstration of how Mr. Furreh will behave on probation or supervised release.

2.   Employment and School

Unfortunately Mr. Furreh was unable to attend school as a child. Growing up his country, Somalia was engaged in a civil war and he was confined to his house. (PSR, 7.) The war leaving the home unsafe, so Mr. Furreh's family fled from Somalia once he was six years old to a refuge camp in Ethiopia. However, once in Ethiopia he did not have proper documents and was unable to enroll in school. Mr. Furreh did occasionally attend small Islamic religious classes while in Ethiopia. (PSR, 9.)

Education is not something that Mr. Furreh wasn't interested in, but rather something he could not partake in. Once he immigrated to the United States and education was something that was accessible, he immediately enrolled in school at the Minneapolis Public Schools from April 2000 to March 2004. He went to school at Washburn High School in a program that kept new students from

Somalia separated from other students to help them learn English. Once Mr. Furreh turned 21, he was no longer allowed to participate in the program.

In 2008, Mr. Furreh continued his education at North Hennepin Community College in Brooklyn Park, however was not able to attend very long due to financial issues. Despite all of the obstacles that prevented Mr. Furreh from obtaining an education, he has shown dedication and a desire to be educated.

Not only was education something difficult for Mr. Furreh to obtain, but obtaining employment was challenging due to his lack of education and English language skills. However, those issues did not stand in Mr. Furreh's way of maintaining various jobs. After finishing his classes at Washburn High School, Mr. Furreh worked at Cypress Semiconductor from 2004-2005. From 2008-2009, he cleaned airline cabins through G2 Secure Staff in Bloomington, Minnesota. From 2010-2011, Mr. Furreh worked as a security officer. In 2012, Mr. Furreh worked as seasonal driver for the United States Postal Service. He then worked at Magnum Transportation in St. Paul from September 2012 to December 2013, however left because he was not getting enough hours. From June to October 2014, he worked at Go Fresh in Minneapolis, Minnesota. However, he was terminated because he was in custody on this matter. Since his release, Mr. Furreh has been working fulltime through Montu Staffing in Hopkins, Minnesota. He is a truck driver.

Obtaining an education and employment are not things that have come easy to Mr. Furreh. However, both these things are very important to Mr. Furreh and

that is evident by his strong desire and will to keep pushing despite all of the obstacles he has faced. Mr. Furreh aspires to complete different IT certifications in the future, and hopes to one day buy his own truck and run his own trucking business.

      3.    Family

Mr. Furreh has a very supportive and loving family.  He has a large extended family that he has constant contact with.  Mr. Furreh lives in Hopkins with his mother, his sister, his two younger brothers, his younger sister, and four of his half siblings.

Mr. Furreh married in 2008. He has three daughters aged five, four and two.  Mr. Furreh and his wife separated in 2013, however, Mr. Furreh hopes that they will be able to reconcile.  His wife is currently in Kenya with her mother receiving medical help for mental health issues.  Their three children live with his sister in law, and Mr. Furreh visits with them every weekend.  He pays $582.00 per month in child support, and has not missed a payment.

Mr. Furreh's family is very important to him.  He spends all of his time on pretrial release either working or spending time with his family.  Mr. Furreh says that their support gives him courage, and is very grateful for his family.

      4.    Criminal History

Mr. Furreh committed a crime, and is aware and remorseful of it. However, this is his first offense. The total criminal history score for Mr. Furreh is zero because he had only ever had a misdemeanor offense on his record, a charge of No

9

Medical Waiver in Possession. Due to his lack of a criminal history, he should be in the criminal history category I, however, because under USSG §3A1.4(b) his offense involved a federal crime of terrorism his criminal history category becomes VI. He has been law abiding while on pretrial release. There is very little likelihood that he will commit another crime. He has spent most of his life following the rules. He has shown how serious he takes his offense by remaining law abiding and following the rules set forth by pretrial services and the Court.

**C.     Deterrence and protection of the public**

Mr. Furreh is not a danger to the public. He had never committed a crime before this offense, and has not committed one since October 2014. It is important to note that he changed his mind about al Shabaab and made attempts to travel back to the United States soon after his arrival in Kenya.

Being prosecuted by the Federal Government, being detained in Kenya, staying in custody from September 30, 2014 to October 3, 2014, having a curfew, wearing a GPS bracelet and being on pretrial release are all consequences Mr. Furreh has received. These consequences themselves serve as a deterrent. His trip to Kenya served as a reality check. He now knows that the United States is the place he wants to live his life, serve his community in a positive way, and raise his family.

**D.     Sentencing Range**

Based on the total offense level of 29 and the criminal history category of IV the guideline imprisonment range is 151 months to 188 months. However,

under USSG §5G1.1(a) the statutory authorized maximum imprisonment for the offense is eight years, so the guideline term of imprisonment is 96 months.

Mr. Furreh does want to bring to the Court's attention that a 12-level increase is applicable because under 18 U.S.C. § 1001, False Statements a statutory maximum of eight years imprisonment applies because the matter relates to international terrorism or domestic terrorism. Mr. Furreh's offense of False Statements under 18 U.S.C. § 1001 is not listed among the statutes that define a federal crime of terrorism at 18 U.S.C. § 2332b(g)(5)(B)(i), which would increase the offense level to at least 32. Mr. Furreh's criminal history category is a VI. Mr. Furreh has no priors and a criminal history score of zero, and according to the USSG Chapter 5, Part A sentencing table the criminal history category should be I. However, because his offense involved a federal crime of terrorism USSG §3A1.4(b) calls for the criminal history category to be VI.

### E.    Unwarranted Disparities

Adarus Ali, 09-CR-317 (01)(MJD), was sentenced to 24 months by this Court on May 29, 2013 for making false statements while testifying before a federal grand jury in regards to a federal investigation known as "Operation Rhino," it focused on Somali men from the Twin Cities being recruited to join al-Shabaab. Saynab Hussein, 13-CR-222 (01)(MJD), was sentenced by this Court on May 14, 2014 to three years probation for lying to a grand jury about raising money for men who went to Somalia to join al Shabaab. Both Ali and Hussein

pled guilty to perjury in violation of 18 U.S.C. §1623(a).  Abdow Abdow, 09-CR-292 (01)(JMR/SRN), was sentenced to 120 days imprisonment, and 120 days home confinement on July 21, 2010 for obstruction of justice in violation of 18 U.S.C. 1512(c)(2).  Mr. Abdow lied to FBI agents when he was questioned regarding their investigation of missing Somali males from Minneapolis joining al Shabaab.  Abdifatah Isse, 09-CR-50 (01)(MJD/FLN), and Salah Ahmed, 09-CR-50 (02)(MJD/FLN), were both sentenced on May 29, 2013 for providing material support to terrorists in violation of 18 U.S.C. §2339A(a) to 36 months imprisonment.  Mr. Isse and Mr. Ahmed went to Somalia to join al Shabaab, participated in a training camp for two and a half months, and then returned to the United States.

## II.    The Future

Mr. Furreh regrets and feels remorseful for his actions.  When interviewed by the probation officer on October 14, 2014 he expressed remorse for lying to the agents when he was interviewed.  Mr. Furreh feared that he would be in trouble for traveling to Kenya, and admitting he knew certain people would make things worse for him.  He had never been in trouble before and the unknowns of the interrogation, and the fear he had over what was going to happen since he chose not to join al Shabaab and return to Minnesota, led him to be dishonest.  Mr. Furreh recognizes that was wrong and has not and will not have any future issues with the law.  At the conclusion of this case, he will continue striving to get more education so he can one day own his own business.  Mr. Furreh recognizes that

12

living in the United States is an honor. He wants to prevent others from joining al Shabaab and wants to help by talking to other young Somali men who may be recruited to join al Shabaab to speak out about his firsthand knowledge and emphasize the positives of living in the United States. Mr. Furreh admits that going through this has made him more aware and appreciative of his life. He wants to complete his sentence and supervision and make something of himself. He hopes to get his own place so his three daughters can live with him and he can take care of them. Mr. Furreh has faced many challenges in his life; he has learned from them, and is a better and stronger man because of them. This has been shown since his release, and he will continue to show it.

## CONCLUSION

    Mr. Furreh has had a tough life. He has worked hard his whole life and not made excuses for the all of the obstacles that have gotten in the way of things. Things have not been easy for him, and Mr. Furreh has never complained about that. However, Mr. Furreh was briefly tempted by false advertising of an "easier" life. He was deceived into thinking there was some place that was better than the United States, and when he figured out that al Shabaab was not what he was expecting, he returned to the Untied States. Mr. Furreh knows good things do not come easy. Mr. Furreh thought being honest about going to Kenya and learning about al Shabaab would result in him being in more trouble. He knows now that

he should have been honest, and feels regret and remorse over his untruthfulness. He has demonstrated this by being completely truthful since the offense, and he wants to have the chance to speak to other Somali youth to prevent others following the path that he did.

Prior to this offense, he was completely law abiding with the exception of the misdemeanor charge for not having his medical waiver card in his truck. In other words, this act was completely out of character for Mr. Furreh. This conviction and the two weeks he was detained in Kenya, as well as the days he served in federal custody, act as consequences and as deterrents. There was nothing violent per se about his offense conduct, he did not posses a weapon, he did not attend a training camp, he wasn't in a battle, he did not assault or threaten anyone, nor did he attempt to flee, he was not completely honest with agents when he was questioned.

Mr. Furreh will never commit another offense because he is now fully aware of the positives in his life and the great opportunities that he has by being in this country. Mr. Furreh has big dreams once this case is completed, going through this has made him stronger, and he will not do anything else that will get in the way of achieving his dreams.

Respectfully, Mr. Furreh requests a downward variance from his advisory guideline range.

Dated:  March 8, 2015

                                                       Respectfully submitted,

                                                      <u>*s/Manny K. Atwal*</u>
                                                      MANNY K. ATWAL
                                                      Attorney ID No. 0282029
                                                      Attorney for Defendant
                                                      107 U.S. Courthouse
                                                      300 South Fourth Street
                                                      Minneapolis, MN 55415