UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 14-315 (MJD)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S POSITION** |
| v. | ) | **WITH RESPECT TO SENTENCING** |
| | ) | |
| MAHDI HUSSEIN FURREH, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys Andrew M. Luger, United States Attorney for the District of Minnesota, and Assistant United States Attorney Charles J. Kovats, Jr., hereby submits its position with respect to sentencing of Mahdi Hussein Furreh ("Mahdi Furreh" or "defendant").

## I.  THE CASE AGAINST MAHDI FURREH

### A.  The Charge of Conviction

On October 3, 2014, defendant Mahdi Furreh pleaded guilty to Making a False Statement, in violation of 18 U.S.C. § 1001(a).  Because the defendant made the false statement in the context of a terrorism investigation conducted by the FBI, this offense carries a statutory maximum sentence of 8 years' imprisonment, a three-year term of supervised release of life, a $250,000 fine, and a $100 special assessment.

### B.  The Defendant's Relevant Conduct

#### 1.  *The Factual Basis in the Plea Agreement*

As agreed to by the parties in the plea agreement:

On January 10, 2014, in the State and District of Minnesota, the defendant knowingly and willfully made a false statement to agents of the Federal Bureau of

Investigation ("FBI").   At the time the defendant made the statement, the defendant knew the agents of the FBI were pursuing an investigation involving international terrorism. More specifically and as set forth below, the defendant knew the FBI was investigating (1) the travel of young men who left Minnesota and joined the foreign terrorist organization, al Shabaab; (2) the identities of individuals in Minnesota who provided material support to al Shabaab; and (3) the defendant's own contacts with an indicted fugitive who left Minnesota in 2009 to join al Shabaab.

On or about March 26, 2013, the defendant left the United States and traveled to Nairobi, Kenya.   On or about April 13, 2013, the defendant was taken into custody by Kenyan law enforcement officials.   The defendant was not charged with any offense and was released.   However, the defendant's cellular telephone was seized by Kenyan law enforcement officials and later turned over to the FBI.   A subsequent analysis of the defendant's cellular telephone revealed (1) a contact in the defendant's cellular telephone's address book for an individual named "Adaway"; (2) many attempted calls and approximately three completed calls to "Adaway"; and (3) a text message that referred to an individual named "Mardaadi."

On January 10, 2014, when asked by agents of the FBI about "Adaway," the defendant falsely stated that he did not know anyone named "Adaway" or have any contact with "Adaway" during his time in Nairobi, Kenya, in March and April of 2013.   The defendant also falsely stated that "Mardaadi" was an individual the defendant "met in a coffee shop" in Nairobi, Kenya, at the same time.

At the time the defendant made these statements, the defendant well knew that "Adaway" and "Mardaadi" referred to Cabdulaahi Ahmed Faarax, a/k/a Adaki, a/k/a Mardaadi, an indicted fugitive from Minnesota and member of al Shabaab.   The defendant also knew that after his arrival in Nairobi, Kenya, the defendant repeatedly contacted and attempted to contact Cabdulaahi Ahmed Faarax, a/k/a Adaki, a/k/a Mardaadi, using his cellular telephone.   The defendant made these false statements knowingly and willfully – in order to impede the FBI's investigation.

### 2.    The Facts Described in the PSR

In addition to the false statements the defendant made to the FBI on January 10, 2014 – the conduct that resulted in the count of conviction – the PSR describes other obstructive behavior made by the defendant.   The defendant's relevant criminal conduct reaches back to the summer of 2012 when he first engaged with others in a conspiracy to support al Shabaab.   For example, on September 7, 2012, the defendant was interviewed about two young men whom the defendant delivered to the airport in July 2012 and later joined al Shabaab.   The defendant falsely claimed that he believed these two men were traveling to Africa to "visit family."   At the time the defendant made this false statement, he knew the two men intended to join - and in fact did join - al Shabaab.   A few weeks later, on September 19, 2012, the defendant repeated these same lies.   (PSR ¶¶ 8-10).

In the spring of 2013, the defendant traveled to Nairobi, Kenya, and was arrested by Kenyan authorities.   As described above, the defendant was released and never charged with an offense but was interviewed by FBI agents while in Kenya.   In these interviews, he persisted in telling lies to the FBI.   Specifically, he lied about the purpose of his own

travel ("pursing a business opportunity") and falsely denied having contact with anyone in Somalia. (PSR ¶¶ 11-12).   In a second interview with the FBI in Kenya, when confronted with his own clothing (camouflaged) and shoes (heavy boots), he falsely denied that he had considered joining al Shabaab.   (PSR ¶ 14).

### 3.   Other Relevant Conduct

Following his return to the United States from Kenya, the FBI again confronted the defendant about the inconsistencies in his explanations for his presence in Kenya, his knowledge of the travel of the July 2012 travelers, and whether he knew anyone who supported al Shabaab.   The defendant repeated his lies that he went to Kenya for a business opportunity, that the July 2012 travelers went to Africa to visit family, and that he did not know any al Shabaab supporters, despite have conspired with several of them, including Guled Omar, to support al Shabaab.

### C.   The Pertinent Guideline Calculations Agreed to by the Parties

In the plea agreement, the parties agree that the base offense level for the defendant's crime of conviction is 14 (U.S.S.G. § 2J1.2) and that the specific offense characteristic for a crime involving or promoting terrorism is applicable (U.S.S.G. § 3A1.4(a)).   Following a three-level adjustment downward for acceptance of responsibility (U.S.S.G. §§ 3E1.1(a) and (b)), the parties agree the total offense level is 29.

Because of the application of U.S.S.G. § 3A1.4(a), the parties also agreed that the defendant's criminal history category is VI.   With a total offense level of 29 and criminal history category of VI, the resulting guideline range is 96 months' imprisonment, the statutory maximum sentence.

## II.      THE PSR's CALCULATIONS AND RECOMMENDATIONS.

On or about January 16, 2015, the United States Probation Office disclosed the PSR in this case. The PSR calculates defendant's applicable guideline range at 96 months' imprisonment, based on a total offense level of 29, criminal history category VI, and a statutory maximum sentence of 5 years' imprisonment.   (PSR ¶ 70).

The PSR guideline calculations are summarized as follows:

**Base Offense Level, § 2J1.2:**                                    14   (PSR ¶ 24)

**Victim Related Adjustments:**

Felony involving/promoting crime of terrorism § 3A1.4(a):   +12   (PSR ¶ 26)

Increase offense level to 32 pursuant to § 3A1.4(a):            32   (PSR ¶ 26)

Acceptance of responsibility, §§ 3E1.1(a), (b):                  -3   (PSR ¶¶ 31, 32)

**Total Offense Level:**                                          29   (PSR ¶ 33)

Criminal History Category:                                         VI   (PSR ¶ 38)

Guideline Range:                                              96 months   (PSR ¶ 70)

Supervised Release:                                          Up to 3 years   (PSR ¶ 73)

Fine:                                                  $15,000-$150,000   (PSR ¶ 79)

The PSR also indicates that the information provided does not constitute a recommendation by the USPO for a departure or a variance.

## III.     GOVERNMENT'S RESPONSE TO THE PSR.

### A.      Objections to the PSR

The government has no objections to the PSR.

### B.      The Government's Guideline Calculations

The government agrees with the guideline calculations in the PSR. The government does not believe any other Specific Offense Characteristics or Victim-Related Adjustments are appropriate.   The government also concurs that the appropriate guideline range is 96 months' imprisonment based on a Total Offense Level of 29 and a Criminal History Category of VI.

## IV.    THE GOVERNMENT'S APPLICTION OF 18 U.S.C. § 3553(a)

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court set forth the appropriate sentencing methodology: the district court calculates the advisory Guidelines range and, after hearing from the parties, considers the 18 U.S.C. § 3553(a) factors to determine a sentence sufficient, but no greater than necessary, to achieve the goals of 18 U.S.C. § 3553.   552 U.S. at 49-50; *United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors").

The district court may not assume that the Guidelines range is reasonable, but instead "must make an individualized assessment based on the facts presented." *Id.* at 50. If the court determines that a sentence outside of the Guidelines is called for, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.*   Section 3553(a) requires the Court to analyze a number of factors, including, "the nature and circumstances of the offense,"

"the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities."   18 U.S.C. § 3553(a).

**A.      Nature and Circumstances of the Offense.**

Although the criminal charge in this case resulted from the false statement made to the FBI agents by the defendant on January 10, 2014, the roots of his criminal conduct reach backward nearly 18 months when the defendant joined a group of men who sought to become fighters for al Shabaab.   Of this group, two traveled to Somalia in July 2012 to join al Shabaab; another attempted to travel to Somalia to join al Shabaab in August 2012, but was denied boarding by U.S. authorities; and the defendant himself traveled to Kenya with the intent to join al Shabaab in March 2013 before reconsidering his decision to join al Shabaab and returning to the United States.   The defendant's dishonesty was both material and impactful to the government's investigation – ensuring the longevity of the conspiracy well past when it would have been disrupted by the FBI.

The nature and circumstances of both the defendant's offense and his relevant conduct weigh in favor of a substantial custodial sentence in this case.

**B.      History and Characteristics of Defendant.**

The defendant was born in Mogadishu, Somalia, in 1982. (¶ 41).   When he was six years old, his family fled Somalia and, after several years living in a refugee camp in Ethiopia, immigrated to the United States in 2000.   (¶¶ 42, 44).   In May 2012, about

which time the defendant began involving himself in a conspiracy to support al Shabaab, he became a United States citizen.

Once arrested on the indictment and after appointment of new counsel, the defendant accepted full responsibility for his offense and agreed to a negotiated resolution of his case.   The defendant expressed remorse for his criminal conduct that led to his arrest and has saved the government significant resources by his prompt plea of guilty.   He has remained law abiding while on supervised release and the government hopes the defendant remains so in the years to come.

### C.   The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense.

The defendant committed a serious offense when he knowingly – and repeatedly – lied to the FBI while they attempted to disrupt a conspiracy of men who sought to provide support to al Shabaab.   In so doing, the defendant not only endeavored to shield himself and his co-conspirators from prosecution, but he provided his co-conspirators space to continue their wrongdoing.

Further, although the defendant has no appreciable criminal history and this offense represents his first criminal conviction, his lies set back a crucial investigation relating to the recruitment and delivery of young men in Minnesota to al Shabaab.   Moreover, his participation in this criminal conspiracy cannot be viewed as a discrete event occurring at a singular place and time.   His repeated lies, his trip to the airport to deliver his associates to al Shabaab, and his own travel to Africa, demonstrated his loyalty to the members of a conspiracy encompass a period that endured for more than two years – from June 2012

until the defendant finally accepted responsibility for his crimes in October 2014. Considering the seriousness of the crime – and the defendant's willingness to lie again and again – promoting respect for the law and providing just punishment are both important factors the Court should strongly consider when imposing a sentence for this defendant.

> **D.    The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct, and the Need for the Sentence Imposed to Protect the Public from Future Crimes of This Defendant.**

In this case, there is a need for both individualized and general deterrence. Individualized deterrence is that which discourages a defendant from ever committing such a crime again.   General deterrence is the public response necessary to deter other people from committing similar crimes.   "Congress specifically made general deterrence an appropriate consideration . . ., and we have described it as 'one of the key purposes of sentencing.'" *Ferguson v. United States*, 623 F.3d 627, 632 (8th Cir. 2010) (quoting *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006)).

Terrorists and terrorist organizations rely upon support from individuals for their success in carrying out specific attacks, as well as their continued existence.   The sentence imposed in this case needs to deter individuals from believing that they can frustrate law enforcement's investigations – terrorism or otherwise – by deceiving investigators when interviewed.   In the District and State of Minnesota, which has seen a proliferation of cases involving young men traveling to join al Shabaab and ISIL, this is no small interest. During these terrorism investigations, agents and officers seek interviews with many individuals whom they believe possess relevant information.   This is their job and obligation to our community, and in the broadest sense, these investigative steps are meant

to save lives.   Investigators are (1) attempting to intercept travel young people from leaving Minnesota to join terrorist organizations where they will surely die, kill others, or both; (2) attempting to disrupt the flow of money and other resources to terrorist organizations; and (3) endeavoring to keep terrorism from occurring here.

To date the prosecution of the men who have joined al Shabaab and ISIL, as well as those who have supported them, have not completely stemmed the flow of support to foreign terrorist organizations from Minnesota.   The government respectfully requests the Court strongly consider the making a positive impact on both this defendant and the broader community when imposing a sentence.

Dated: February 9, 2017                                      Respectfully Submitted,

                                                             ANDREW M. LUGER
                                                             United States Attorney

                                                             s/ Charles J. Kovats, Jr.

                                                             BY:   CHARLES J. KOVATS, JR.
                                                             Assistant U.S. Attorney