```
 1                  UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA
 2
     --------------------------------------------------------
 3                                     )
     United States of America,         ) File No. 14-CR-315
 4                                     )         (MJD/FLN)
             Plaintiff,                )
 5                                     )
     vs.                               ) Minneapolis, Minnesota
 6                                     ) February 22, 2017
     Mahdi Hussein Furreh,             ) 10:06 a.m.
 7                                     )
             Defendants.               )
 8                                     )
     --------------------------------------------------------
 9
                        BEFORE THE HONORABLE
10                        MICHAEL J. DAVIS
                  UNITED STATES DISTRICT COURT JUDGE
11                     (SENTENCING HEARING)

12   APPEARANCES
      For the Plaintiff:        UNITED STATES ATTORNEY'S OFFICE
13                              Charles J. Kovats, Jr., AUSA
                                600 U.S. Courthouse
14                              300 South Fourth Street
                                Minneapolis, MN 55415
15
      For the Defendant:        FEDERAL DEFENDER'S OFFICE
16                              Manvir K. Atwal, ESQ.
                                U.S. Courthouse, Room 107
17                              300 South Fourth Street
                                Minneapolis, MN 55415
18
      Court Reporter:           STACI A. HEICHERT,
19                              RDR, CRR, CRC
                                1005 U.S. Courthouse
20                              300 South Fourth Street
                                Minneapolis, Minnesota 55415
21

22

23      Proceedings recorded by mechanical stenography;
     transcript produced by computer.
24

25
```

**P R O C E E D I N G S**

**IN OPEN COURT**

THE COURTROOM DEPUTY:  The United States of America versus Mahdi Hussein Furreh; Criminal Case No. 14-CR-315.  Counsel, please state your appearances for the record.

MR. KOVATS:  Good morning, Your Honor.  Charles Kovats for the United States.  And I'm joined at counsel table by FBI Special Agent Michael Iverson.

THE COURT:  Good morning.

MS. ATWAL:  Good morning, Your Honor.  Manny Atwal on behalf of Mahdi Furreh who is sitting next -- who is standing next to me.

THE COURT:  Good morning.  Please step forward. All right.  We stopped yesterday because I had been given information that you were spending quite a bit of time at mosque, and we wanted to verify that, and we got -- I got a report back late yesterday afternoon and I e-mailed it to Ms. Atwal and to the government.  Have you had an opportunity to look at it?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right. And so I was given incorrect information about you being at the mosque.  And so as I have told your attorney and the government in chambers that it -- it will have no effect on what's happening here.

1   You understand that?

2            THE DEFENDANT:  Thank you, Your Honor.

3            THE COURT:  Yeah, it's -- when the information is
4   transmitted through two or three people, it shouldn't be
5   mistranslated to the judge but it was.  And, of course, I'm
6   not happy about that, and I'll deal with that later.  We've
7   called your employer, and you do not have a job now.  Did
8   your -- Ms. Atwal, did you talk to him about that?

9            MS. ATWAL:  Just very, very briefly.  I just told
10  him that he -- his boss has fired him.

11           THE COURT:  All right.  Is there anything else
12  that you wish to tell me, sir?

13           THE DEFENDANT:  Your Honor, I want to say I -- I
14  regret what I have done, and I'm always sorry and for that I
15  committed to myself to be truthful and to always be positive
16  and upfront with myself, the government, with the community,
17  with my family, Your Honor.

18           THE COURT:  Well, that -- the problem now is that
19  you have to put down on any job application what you've been
20  convicted of.  Do you understand that?  You can't hide that.
21  Do you understand that?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  Anything further, Ms. Atwal?

24           MS. ATWAL:  Just briefly, Your Honor.  Looking
25  back at his employment record, even though there's been

1   times where he's been unemployed, whether it is because of
2   medical issues or a temporary job finished, he was able to
3   find a job soon after.  Thankfully the title of what he pled
4   guilty to is false statements instead of something that has
5   the word "terrorism" in it.  Now, obviously, if the
6   employer, if they ask more questions, he's going have to be
7   honest about that.  But I am hopeful with that conviction he
8   can still go back and be able to find temporary work.  I
9   highly doubt he's going to be able to get a trucking job
10  given the serious background checks that they do, but if it
11  is any type of work, I know Mr. Furreh really wants to work
12  because one thing he's loved about truck driving is how much
13  he can support his family and that includes his youngest
14  siblings and his three daughters.
15          The second thing I do want to touch upon is
16  looking, again, from July of 2012 up to October of 2014,
17  that wasn't the Mahdi Furreh that I represent today.  It was
18  that person that lied and did very bad things, and although
19  when he went to go join Al-Shabaab he did decide, wait a
20  minute, this is not the right thing and came back, I think
21  that's an important message for people in the community too,
22  that if you come back, you will be punished, as he has been,
23  he has been prosecuted in federal court, he's been wearing
24  an alcohol -- or a excuse me, an ankle monitoring bracelet
25  for over two years now, and he has been receiving that

1  punishment.  But I want it to be also known that if they do
2  come back, there -- it's not going to be the end of the
3  world, you're still alive, you're not dead, you're not being
4  put in a body bag.  That is an important message to give to
5  the community.  And, again, although Mr. Furreh has kind of
6  distanced himself from a lot of folks because originally
7  when there was a lot of stuff going on, people coming up to
8  him, asking him if he was cooperating or what he was doing,
9  and he didn't want that pressure on his family.
10             Since October of 2014, as he has said to the
11  Court, he's really tried to show everybody that he is making
12  up for his mistakes and he's made for those mistakes such
13  that the government was able to file a motion.  And that is
14  very important to know that that did happen and there is a
15  reason that it happened is that we do see Mr. Furreh
16  changing those habits of thinking it's okay to lie, whether
17  it's to a government agent or in front of a grand jury.
18  Both of those occasions have been changed for the better
19  after October 2014.
20             Your Honor, with that, again, I stand by my
21  request, understanding that there's issues out there such as
22  the lying that happened pre-2014, but, again, I would ask
23  the Court to balance that with what we see for the last two
24  years and three months -- four months because it is
25  significant, and that is the Mr. Furreh that we see today,

1    not the one from 2014, 2013, and 2012.
2             THE COURT:  Anything for the government?
3             MR. KOVATS:  Yes, Your Honor, if I may.
4             Your Honor, I know the government has submitted a
5    lot for the Court to consider in writing and so I won't
6    repeat what I've written orally here, but I do want to
7    make -- I want to argue that the sentence requested by the
8    defendant doesn't satisfy the 3553(a) factors and is not
9    appropriate here.
10            We do accept as true that Mr. Furreh has done well
11   on release.  He's maintained work, he's cared for his
12   family, he's otherwise remained productive, and we take no
13   issue with that and we commend him for that.  But we don't
14   believe that the Court's analysis should end there.  A
15   sentence based only on his good conduct after his plea
16   ignores two different things.  I think they're related.  One
17   is how this -- how the Court's sentence today should
18   consider what has been done previously and what the Court,
19   in the government's view, respectfully thinks the Court
20   should consider in a forward-looking way.  First, the
21   government previously recommended a guidelines sentence of
22   37 to 46 months, and that was after considering cooperation
23   for a previous defendant Adarus Ali who was sentenced
24   following his plea to perjury, and the Court went beneath
25   the government's recommendation and sentenced him to

1   24 months.

2        And that defendant, in some ways, had a lot in
3   common with this defendant.  That defendant was on pre-trial
4   release, maintaining good employment, caring for his family,
5   and the Court imposed a sentence that was 25 percent of the
6   96-month guidelines range.  At that time, you know, Adarus,
7   you know, again, he committed perjury, he didn't attempt to
8   travel, at the time he lied Al-Shabaab had been designated
9   for about 18 months as a designated terrorist organization,
10  certainly he should have known better.  This defendant when
11  he lied the first time Al-Shabaab had been designated for
12  five years and I think at that point it was unambiguously a
13  terrorist organization and the support for that organization
14  is and was indefensible.

15       I also think a sentence of time served and I think
16  is more of a forward-looking interest that should be
17  reserved for those defendants who distinguish themselves
18  from this defendant in a more positive way.  For those
19  defendants who accept responsibility from the outset when
20  first approached by law enforcement, when first asked to do
21  the right thing, for those defendants who cooperate in
22  court, testify in open court against others, this defendant
23  didn't, he didn't have the opportunity to do so, so this
24  isn't a knock on him that he didn't, but at the same time,
25  when the Court values cooperation, it should consider people

1    who do the right thing right away and do things that are
2    more extraordinary. And so a sentence of time served
3    provides no room, in the government's view, to account for
4    people in that situation, of which there are some. I would
5    submit to Your Honor that a sentence akin to probation here
6    for someone who maintained his lies for two -- nearly two
7    years deserves a sentence of nearly two years.
8         When the government approaches the next defendant
9    who's standing in the shoes that Mr. Furreh was standing in
10   when first approached, and I would submit to you, Your
11   Honor, that that's going to happen, that individual should
12   understand that he should not be able to get away with his
13   lies for two years and someday come into court and walk out
14   again that same day with no further sanction than their plea
15   of guilty. That individual should appreciate that doing the
16   right thing right away matters, that when he lies that first
17   time and he maintains the lie, that something should start
18   counting against him, that the clock should start running,
19   and so when someone maintains their lie for two years, that
20   should mean something.
21        And in the government's view, that should mean a
22   sentence of about the same period of time that they
23   maintained their lie, that they maintained their adverse
24   posture against the United States, and so that's why the
25   government believes that lying to law enforcement should be

consequential.  And a sentence of four months -- or four days, rather, is not consequential and it won't help law enforcement do their job, it won't help law enforcement keep the next individual from joining Al-Shabaab where they're going to go die and perhaps kill others in the process or join ISIS.

And so for that reason, Your Honor, we believe that the Court's sentence here is very important on a going forward basis.  And in the government's view, a sentence of 25 months of the guideline range is appropriate, and not more than necessary, to meet those important interests.  Thank you, Your Honor.

THE COURT:  Thank you.

MS. ATWAL:  Your Honor, may I respond briefly?

THE COURT:  You may.

MS. ATWAL:  Thank you Your Honor.  I am hopeful, given the length of time that I've done these types of cases, that at some point the message will be to the community when approached by law enforcement, don't lie.  If you don't lie, you won't be prosecuted, you won't have to come to court such that the Court will have to take into consideration cooperation or any of these issues that Mr. Kovats brought up.

The reality is, sadly, that we do have defendants that do lie, just like Mr. Furreh.  But I also want it to be

1  known that when you do start telling the truth, things do
2  get better for you.  For him, it took getting arrested and
3  prosecuted in federal court and the consequence of that, you
4  don't have a job, you can't support your family, you're
5  going to wear that bracelet around, you are monitored 24/7,
6  there are consequences if you li and the consequences get
7  bigger if you don't help the government or you don't help
8  your community to make it better.
9         I'm not asking the Court to ignore his offense
10 conduct because it's serious.  He lied.  That very offense
11 of lying, he tried to correct that very thing, that very
12 thing of lying, he flipped over and told the truth.  Is that
13 a part of 3553(a) factors?  Yes, along with a slew of other
14 good things, such as being -- doing well on pre-trial
15 services, staying law-abiding, staying employed.  But let's
16 look at the offense and the behavior afterwards related to
17 the offense.  Lies, truths, truths, so much that it helped
18 the very people he lied to.  That should count for
19 something.  And I am asking for it to count more than the
20 government, and that is why I'm asking for the sentence of
21 supervised release with credit time served or probation with
22 a special condition that he serve the jail sentence I
23 requested.  Thank you, Your Honor.
24         THE COURT:  Thank you.
25         On October 3rd, 2014, the defendant pled guilty to

1    false statement in violation of Title 18, United States
2    Code, Section 1001A.  It is considered and adjudged that the
3    defendant is guilty of that offense.  The Court has read the
4    presentence investigation report.  The Court has read the
5    submissions of counsel.  The Court has reviewed the motion
6    by the government for a downward departure pursuant to
7    Sentencing Guidelines 5K1.1 and has granted -- and have
8    granted that motion.  The Court has reviewed all the
9    pertinent United States Supreme Court decisions and Eighth
10   Circuit Court of Appeals decisions that would pertain to
11   this case.  The Court has reviewed my own sentencings over
12   the last few years, and the Court will apply the factors
13   under Title 18, 3553(a) in sentencing the defendant here
14   today.
15           The defendant is hereby sentenced to the care and
16   custody of the Bureau of Prisons for a term of 24 months.
17   There is no fine imposed.  And there is no forfeiture
18   issues.  The defendant is sentenced to a term of three years
19   supervised release.
20           The following mandatory conditions are applicable:
21           The defendant must report to the United States
22   Probation and Pre-trial Services Office in the district to
23   which the defendant is released within 72 hours of release
24   from the custody of the Bureau of Prisons.
25           Next, the defendant shall not commit any crimes,

1   federal, state, or local.
2           Next, the mandatory drug testing is suspended
3   based on the Court's determination that the defendant poses
4   a low risk of future substance abuse.
5           Next, the defendant shall not possess a firearm,
6   ammunition, destructive device, or any other dangerous
7   weapon.
8           Next, the defendant shall cooperate in the
9   collection of DNA as directed by the probation officer.
10          The defendant shall abide by the standard
11  conditions of supervised release that have been adopted by
12  this Court, including the following special conditions:
13          The defendant shall submit his person, residence,
14  office, vehicle, or other area under the defendant's control
15  to a search conducted by the United States probation officer
16  or supervised designee at a reasonable time and in a
17  reasonable manner based upon reasonable suspicion of
18  contraband or evidence of a supervision violation.  The
19  defendant shall warn any other residents or third parties
20  that the premises and areas under the defendant's control
21  may be subject to searches pursuant to this condition.
22          The defendant shall not possess or use a computer
23  or have access to any on-line service without the prior
24  approval of the United States Probation and Pre-trial
25  Services Office.  The defendant's cooperation shall include,

1    but not be limited to, allowing installation of a computer
2    and internet monitoring program and/or identifying computer
3    systems, internet-capable devices, and similar memory or
4    electronic devices to which the defendant has access.
5    Monitoring may include random examinations of computer
6    systems, along with the internet, electronic, and media
7    storage devices under the defendant's control.  The computer
8    system or devices may be removed for more thorough
9    examination if necessary.  The defendant shall contribute to
10   the cost of such monitoring services based on the
11   defendant's ability to pay as deemed appropriate by the
12   United States Probation and Pre-trial Services Office.
13           Next, the defendant shall provide the probation
14   officer access to any requested financial information,
15   including credit reports, credit card bills, bank
16   statements, and telephone bills.
17           Next, the defendant shall cooperate with child
18   support officials to make regular support payments and pay
19   any outstanding child support obligations.
20           Next, the defendant shall participate in
21   educational programming as approved by the probation officer
22   to obtain a high school diploma or general equivalency
23   diploma, GED.
24           Next, if not employed at a regular, lawful
25   occupation as deemed appropriate by the probation officer,

1   the defendant may be required to perform up to 20 hours of
2   community service per week until employed.  The defendant
3   may also participate in training, counseling, daily job
4   search, or other employment-related activities as directed
5   by the probation officer.
6           Next, the defendant shall not possess or view,
7   access, or otherwise use material that reflects extremist or
8   terroristic views or as deemed to be inappropriate by the
9   United States probation officer.
10          Next, the defendant shall participate in a mental
11  health counseling program as approved by the probation
12  officer.  This program may include psychological and/or
13  psychiatric counseling or treatment, family counseling, or
14  mental -- a mentor support.
15          Next, the defendant must submit to periodic
16  polygraph testing at the direction of the probation officer
17  as a means to ensure compliance with the requirements of
18  supervision.
19          Next, for the purpose of verifying compliance with
20  any court-imposed condition of supervision, the defendant
21  shall be placed on a program of standalone monitoring for
22  the duration of his term of supervised release in which he
23  will be monitored by the location monitoring technology,
24  with or without a specific schedule, as directed by the
25  probation officer.  The defendant shall not be required to

1    pay for the cost of such location monitoring.
2              Finally, there's a $100 special assessment payable
3    to the crime victims fund which is due and payable
4    immediately.
5              Sir, if you feel the Court has not followed the
6    law in the imposition of your sentence here today, you have
7    a right to appeal my sentence to the Eighth Circuit Court of
8    Appeals, and that appellate court sits in St. Louis,
9    Missouri.  That court reviews all of my sentences to make
10   sure that I have followed the law and the Constitution, and
11   you have a right to appeal my sentence to that court.  You
12   have 14 days from today's date to file your notice of appeal
13   to that court.  Ms. Atwal can file that notice for you or
14   you can file it yourself or you can hire an attorney to file
15   it for you.  But in any event, you have 14 days from today's
16   date to file the notice giving notice to that court that you
17   are appealing my sentence.
18             Do you have any questions about that?
19             THE DEFENDANT:  No, Your Honor.
20             THE COURT:  You understand your sentence?
21             THE DEFENDANT:  Yes, Your Honor.
22             THE COURT:  All right.  Anything further for the
23   government?
24             MR. KOVATS:  No, Your Honor.  Thank you.
25             THE COURT:  Anything further for defense?

1    MS. ATWAL: Your Honor, respectfully, we would ask
2  that the Court recommend that he -- to the BOP that he serve
3  his time here in Minnesota; and two, that he be able to
4  voluntarily surrender to that prison.
5    THE COURT: Because of the nature of this case and
6  where he -- where the other defendants in other cases may
7  be, I'm not going to make any recommendation to the Bureau
8  of Prisons because they'll have to make sure, take care of
9  his safety, and that's the main thing I want taken care of
10  is his safety while he's in custody by the Bureau of Prisons
11  and so they'll be able to -- be able to figure that out
12  better than me making a recommendation that he be in
13  Minnesota.
14    And as for turning himself in, I'm denying that.
15  He'll be taken into custody now.
16    Anything further?
17    MS. ATWAL: No.
18    MR. KOVATS: No, Your Honor.
19    THE COURT: All right. Sir, have a seat.
20  The -- you're going into custody now.
21    (Proceedings concluded at 10:30 a.m.)
22
23                    *     *     *
24
25

```
1            I, Staci A. Heichert, certify that the foregoing is
2    a correct transcript from the record of proceedings in the
3    above-entitled matter.
4
5                     Certified by:   s/ Staci A. Heichert
6                                     Staci A. Heichert,
                                      RDR, CRR, CRC
```